[E1507]

United States District Court,
N.D. Oklahoma.
Feb. 27, 1987.

UNITED STATES of America, Plaintiff,

v.

Stephen J. SONGER, Defendant.

No. 86–CR–19–BT.

Layn Phillips, U.S. Atty., Tulsa, Okl., for plaintiff.

Bernard Segal, San Francisco, Cal., Clark Brewster, Tulsa, Okl., for defendant.

## ORDER OF FORFEITURE

BRETT, District Judge.

This case was again set for sentencing on the 27th day of February, 1987, before the undersigned judge. Proper written notice of the sentencing proceeding was given the defendant through his counsel of record. Both the government and the defendant appeared and were present through their counsel of record and the defendant failed to personally appear.

The jury in this case by its verdict of October 3, 1986, found the defendant guilty of violating 21 U.S.C. § 848 by engaging in the operation of a continuing criminal enterprise which was an international marijuana and cocaine smuggling operation. Also in its verdict, and pursuant to 21 U.S.C. § 853, the jury found that the defendant's ownership interest in the following real and personal property, which were fruits of the continuing criminal enterprise, should be forfeited:

REAL PROPERTY:

32 East Ridge Drive, Santa Cruz, California (Legal description attached as Exhibit A)

PERSONAL PROPEPTY:

National Conveyor Corporation
7405 Greenbush Avenue
North Hollywood, California
Apple Computer Corporation
Affiliated Management, 4150 Riverside Drive, Burbank, California, including accounts titled Stephen J. Songer, 32 Eastridge Drive, Santa Cruz, California, and Songer Investment Account, 4150 Riverside Drive, Burbank, California
KSA Investment Company, 4150 Riverside Drive, Burbank, California
Date Palm Center, joint venture, 4150 Riverside Drive, Burbank, California
Commvest Securities Incorporated, 7124 N. University Drive, Tamarac, Florida (Account No. 550–00836)
E.F. Hutton Cash Fund, Investment Account; and Asset Management Account (Account No. 6800198729)
Barclay's Leasing
Azusa Properties, 4150 Riverside Drive, Burbank, California
Travel Consultants, 1253 East Village Road, Montecito, California
Ferrari automobile
1985 Mercedes, Model 280CE, automobile VIN WDV1230531A222905

The defendant through his counsel of record urges that the Court cannot enter a judgment of forfeiture, pursuant to the jury's verdict, until the time of sentencing at which the defendant must be personally present.

The government urges that since the defendant was properly served with notice of the proceedings and trial, but has willfully and intentionally absented himself, the property forfeiture need not await his personal presence at sentencing.

The Court by its order of September 24, 1986 found that defendant had willfully and intentionally absented himself to avoid trial; and having concluded that the defendant was given proper notice, ordered that the trial proceed in defendant's absence. The jury's verdict was as aforesaid. Therefore, the issue presented is whether the Court can enter a judgment of forfeiture of said property under the facts and circumstances herein. Each party in their post-verdict filings state that there is a dearth of authority on the specific question. Involved is determining the intent of Congress under the relevant statutory authority and the basic rights of the defendant.

The defendant asserts that the court-ordered forfeiture pursuant to 18 U.S.C. § 3554 is an integral part of the sentencing proceedings. As is pointed out in *Songer v. Brett* (10th Cir.1986), the sentence cannot proceed in defendant's absence so the defendant reasons that neither can the property forfeiture order proceed in defendant's absence.

The Court concludes that neither the intent of Congress nor the fundamental rights of the defendant, under the facts and circumstances herein, support the defendant's contention. If the defendant's contention were sustained, any defendant could prevent a property forfeiture order following a finding of guilt of operating a continuing criminal enterprise by intentionally failing to appear and thereby avoid formal sentencing. The previously determined fruits of the continuing criminal enterprise would thereby be placed beyond the jurisdiction of the mandatory forfeiture order as provided in 21 U.S.C. § 853 and 18 U.S.C. § 3554.

Relevant statutes and congressional history state:

Fed.R.Crim.P. 32 (b)(2). *"Criminal Forfeiture.* When a verdict contains a finding of property subject to criminal forfeiture, the judgment of criminal forfeiture shall authorize the Attorney General to seize the interest or property subject to forfeiture, fixing such terms and conditions as the Court shall deem proper."

21 U.S.C. § 853(c) provides:

"All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property, who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section."

The order of criminal forfeiture statute, 18 U.S.C. § 3554 states in pertinent part:

"[t]he court, in imposing sentence on a defendant who has been found guilty of an offense described in ... Title II ... of the Comprehensive Drug Abuse Prevention and Control Act of 1970 [such as 18 U.S.C. § 848] shall order, in addition to the sentence that is imposed pursuant to the provisions of section 3551 [authorized sentences], that the defendant forfeit property to the United States in accordance with the provisions of ... section 413 [classified to 21 U.S.C. § 853] of the Comprehensive Drug Abuse and Control Act of 1970."

Relevent portions of the legislative history concerning the Comprehensive Crime Control Act of 1984 (Public Law 98–473) taken from the U.S.Code Cong. & Ad.News state:

"... This bill is intended to eliminate the statutory limitations and ambiguities that have frustrated active pursuit of forfeiture by Federal law enforcement agencies." (Page 3375)

\* \* \* \* \* \*

"The other type of forfeiture, criminal forfeiture, is relatively new to Federal law, although it has its origins in ancient English common law. It is an *in personam* proceeding against a defendant in a

criminal case and is imposed as a sanction against the defendant upon his conviction...." (Page 3376)

\* \* \* \* \* \*

"Criminal forfeiture must be alleged in the information or indictment. If the defendant is found guilty of the underlying offense, then a special verdict must be returned with respect to the forfeiture allegations and a judgment of forfeiture is entered against the defendant. Only then is the government authorized to seize the property." (Page 3376–3377)

\* \* \* \* \* \*

"Subsection (c) of 18 U.S.C. § 1963, as amended by the bill, is a codification of the 'taint' theory which has long been recognized in forfeiture cases. Under this theory, forfeiture relates back to the time of the acts which give rise to the forfeiture. The interest of the United States in the property is to vest at that time, and is not necessarily extinguished simply because the defendant subsequently transfers his interest to another. Absent application of this principle a defendant could attempt to avoid criminal forfeiture by transferring his property to another person prior to conviction." (Page 3383)

\* \* \* \* \* \*

and

"As is provided in current 18 U.S.C. 1963(c), upon conviction of the defendant the court is to enter a judgment of forfeiture and authorize the Attorney General to seize the property upon such terms and conditions as the court shall deem proper. After entry of the order of forfeiture, it may be necessary to obtain an accurate accounting of the property, and the property may continue to be vulnerable to depletion or transfer if it is not immediately seized. Thus, subsection (f) provides that the court may appoint receivers or trustees and may enter appropriate restraining orders. Subsection (f) also permits the use of income accruing to or derived from an enterprise to offset

ordinary and necessary expenses of the enterprise that are legally required or which are necessary to protect the interests of the United States or third parties. Thus, the value of an enterprise may be preserved until it is disposed of." (Page 3388) [1]

S. Rep. No. 225, 98th Cong., 2d Sess. 82, reprinted in 1984 U.S.Code Cong. & Ad. News 3182, 3265 states:

"[i]n any discussion of forfeiture statutes, it is important to distinguish between criminal forfeiture and civil forfeiture. Criminal forfeiture is part of the sentence imposed upon conviction for a particular crime. In this sense, the proceeding is *in personam* against the defendant. There is no additional proceeding required before the property is forfeited to the United States. The forfeiture is automatic upon imposition of sentence. On the other hand, under those Federal statutes which provide for civil forfeiture, the forfeiture is not part of the sentence."

From the above relevant statutes and history, congressional intent is clear that it wanted to prevent the convicted defendant from interfering with or frustrating the government's seizure of tainted property. If the defendant's position herein is upheld, by his intentionally fleeing he will have succeeded in avoiding forfeiture of the subject property, and such was not the intent of Congress.

The rationale stated in case authority in support of defendant's personal presence at sentencing is not relevant to the forfeiture of the subject property.

A number of courts have found that a defendant's presence at sentencing would be required constitutionally even without the clear mandate of Fed.R.Civ.P. 43. *See James v. United States*, 348 F.2d 430 (10th Cir.1965); *United States v. Persico*, 87 F.R.D. 156 (E.D.N.Y.1980).

In *United States v. Turner*, 532 F.Supp. 913 (N.D.Cal.1982), the court summarized the policy considerations of requiring the

---

**1.** The Court has considered the appointment of a receiver herein, but because of the indeterminate nature of defendant's fugitive status, has rejected such course of action.

defendant's presence at sentencing in the following quote:

> " 'Presence is of instrumental value to the defendant for the exercise of other rights, such as to present mitigating evidence and challenge aggravating evidence, and it may also be advantageous to him that the decision maker be required to face him. The state may have an interest in the presence of the defendant in order that the example of personal admonition might deter others from similar crimes. Moreover, it may sometimes be important that the convicted man be called to account publicly for what he has done, not to be made an instrument of the general deterrent, but to acknowledge symbolically his personal responsibility for his acts and to receive personally the official expression of society's condemnation of his conduct. The ceremonial rendering of judgment may also contribute to the individual deterrent force of the sentence if the latter is accompanied by appropriate judicial comment on the defendant's crime.

> " 'However, there is an additional and perhaps more fundamental justification for the right to be personally present. Respect for the dignity of the individual is at the base of the right of a man to be present when society authoritatively proceeds to decide and announce whether it will deprive him of life or how and to what extent it will deprive him of liberty. It shows a lack of fundamental respect for the dignity of a man to sentence him *in absentia*. The presence of the defendant indicates that society has sufficient confidence in the justness of its judgment to announce it in public to the convicted man himself. Presence thus enhances the legitimacy and acceptability of both sentence and conviction.'

"Note, *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv.L. Rev. 821, 831 (1968). *See also, United States v. Curtis*, 523 F.2d 1134, 1135 (D.C.Cir.1975)...."

The property forfeiture in the instant case does not involve these same considerations requiring the personal presence of the defendant. The defendant cannot offer mitigating or extenuating circumstances relating to the property forfeiture given the jury's verdict and the mandatory forfeiture duty of the court. The property forfeiture will not involve the same public accounting, societal condemnation and deterrent force to the defendant which would be present in depriving the defendant personally of his liberty. Here the tainted property will suffer no loss of dignity when ordered surrendered and is merely the nondiscretionary court enforcement of the jury's decision.

In *Golden v. Newsome*, 755 F.2d 1478 (11th Cir.1985), the court faced a situation somewhat analogous to the instant case. The defendant in *Golden* claimed that his absence from trial did not waive his Sixth Amendment right to counsel during a subsequent sentencing. The court found the right to counsel had been violated where the sentence imposed was discretionary. The court in a footnote made a statement which is pertinent here as well:

> "Obviously, where the precise sentence for a particular offense is mandatorily fixed by law such that its imposition is merely a ministerial ceremony, with no discretion to be exercised by the sentencing judge, the absence of counsel at such a proceeding could not *possibly* be prejudicial. In that rare and narrow circumstance, the legal presumption of prejudice due to the absence of counsel would not apply." (Emphasis in original) 755 F.2d at 1483, n. 9

In felony sentencing a court has a wide discretion, i.e., imposition of a fine and/or a confinement sentence, or probation. Even in the case of a continuing criminal enterprise conviction a court has wide discretion in imposing confinement of from ten years to life imprisonment and/or a fine. The court has no discretion with reference to the jury verdict determined tainted property because it is mandatory that it be forfeited. In reference to the forfeiting of the tainted property, the *sine qua non* is the verdict of guilty of the defendant which

includes the property forfeiture finding, not the subsequent personal presence of the defendant.

The facts and circumstances herein warrant proceeding with the forfeiture in Songer's intentional absence. As previously noted, Songer had due and proper notice of the indictment and personally appeared at court proceedings on many occasions previous to commencement of trial. The evidence is clear that Songer's absence is voluntary and intentional. The notice and due process included the specific property now subject to this forfeiture order.

How long Songer will remain a fugitive is unknown. He may surrender, be captured, or never return. Because of the government's paramount right to the property, it is now more subject to waste, neglect and/or wrongful transfer or disposition. Also, third party claims pursuant to 21 U.S.C. § 853(n) should be resolved.

It will be the function of the government, pursuant to this order, to seize the subject property and cause it to be properly cared for, including sale, if necessary and reasonable. If there is an appeal of the conviction of the defendant, and in the event of a reversal, the government would be required to return the subject property or reasonable compensation therefor to the defendant, his heirs, successors or assigns.

Therefore, the Court concludes that personal jurisdiction has previously been acquired over the defendant, Songer, and the Court hereby enters an *in personam* order forfeiting Songer's interest in and to all of said subject property.

A separate judgment of forfeiture is filed contemporaneous herewith.

Further, the government shall implement the Attorney General's procedure for notice to any third parties claiming an interest in the property forfeited pursuant to 21 U.S.C. § 853(n). A hearing shall be conducted to assess any third party claims on a date to be set by further order of the court.

## EXHIBIT A

RECORDING REQUESTED BY

PENNIMAN TITLE COMPANY, INC.

AND WHEN RECORDED MAIL TO

NAME  M/M Stephen J. Songer
ADDRESS  P. O. Box 1012
CITY & STATE  Aptos, California 95003

Title Order No._____ Escrow No. 120148-ren

RECORDED AT REQUEST OF
PENNIMAN TITLE CO.
DEC 9 1980
RICHARD C. NEAL, Recorder
SANTA CRUZ COUNTY, Official Records

MAIL TAX STATEMENTS TO

NAME
ADDRESS  same as above
CITY & STATE

SPACE ABOVE THIS LINE FOR RECORDER'S USE

DOCUMENTARY TRANSFER TAX $ 247.50 paid
XX  COMPUTED ON FULL VALUE OF PROPERTY CONVEYED.
____ COMPUTED ON FULL VALUE LESS LIENS & ENCUMBRANCES
REMAINING THEREON AT TIME OF SALE
PENNIMAN TITLE COMPANY, INC
BY_____
Signature of declarant or agent determining tax · firm name.

## Grant Deed

AFFIX I.R.S. $..............

L-1                THIS FORM FURNISHED BY  PENNIMAN TITLE CO., INC.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

  ALEXANDER L. MALLCKE, surviving Joint Tenant,

hereby GRANT(S) to
                                        8-9-80-1266-00-1675  •  6   **0.247.50

  STEPHEN J. SONGER and SHARON L. SONGER, husband and wife,
  as Joint Tenants,

the following described real property in the
county of  Santa Cruz              , state of California:

  EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;

  APN: 60-111-1

Dated December 2, 1980                    _Alexander L. Mallcke_
                                           Alexander L. Mallcke

STATE OF CALIFORNIA
COUNTY OF_ SANTA CRUZ           } SS.
On_ December  4, 1980 _before me, the under-
signed, a Notary Public in and for said County and State, personally
appeared_ Alexander L. Mallcke _.

_____ known to me
to be the person___ whose name is ___subscribed to the within
instrument and acknowledged that  he __ executed the same.

_____
      Signature of Notary

      Name (Typed or Printed) of Notary

FOR NOTARY SEAL OR STAMP

OFFICIAL SEAL
ROSS E. MURRAY
Notary Public  California
Bond Filed
In Santa Cruz County
MY COMMISSION EXPIRES NOV. 23 1984

## EXHIBIT "A"

      SITUATE in the County of Santa Cruz, State of California.

PARCEL ONE:

      BEING a portion of the Rancho Carbonero, County of Santa
Cruz, State of California and bounded by a line more particularly
described as follows:

BEGINNING in the centerline of the first described right of way in Torrens Document No. 860, filed January 14, 1948 with the Registrar of Land Titles of Santa Cruz County, at a station from which the Northeasterly end of the course reading "thence North 67° 08' East 360.17 feet to a station" bears North 67° 08' East 97.63 feet distant and from which point of beginning a steel rail bears North 29° 07' West 30.12 feet distant; thence from said point of beginning North 29° 07' West 250.4 feet to a steel rail; thence North 25° 13' West 108.3 feet to a 2 by 2 stake; thence North 6° 56' West 88.25 feet to a steel rail; thence South 84° 46' West 197.0 feet, more or less, to a station on the Westerly boundary of the lnads described as Parcel One in Torrens Certificate of Title No. 504; thence South 6° 08' West along said Westerly boundary 385.8 feet to the most Northerly corner of the lands described in Torrens Certificate of Title No. 481; thence South 60° 16' East 180.7 feet to a 1/2 inch iron pipe marking an angle in the Northwesterly line of the first above mentioned right of way; thence South 48° 42 1/2' East 22.22 feet to the corresponding angle point in the centerline of said right of way; thence along said centerline North 67° 08' East 262.54 feet to the point of beginning.

PARCEL TWO:

A right of way, appurtenant to Parcel One herein, over the following described parcels of land:

(a)  A right of way over a strip of land and turning area, the strip of land to be 40 feet in width, 20 feet on each side of the following described centerline:

BEGINNING at a point on the Southwesterly boundary of the lands described in Torrens Certificate No. 504 from which an iron pipe at the Southeasterly end of course reading "thence South 31° 36' East 333.95 feet to an iron pipe" bears South 31° 36' East 67.41 feet distant; thence from said point of beginning North 15° 27' East 127.35 feet to a station; thence North 67° 08' East 360.17 feet to a station; thence North 16° 24' East 64.94 feet to a station; thence North 17° 06' West 89.82 feet to a station; thence North 11° 54' West 198.67 feet to a station; thence North 0° 26' East 120.32 feet to a station; thence North 48° 46' West 122.80 feet to a station; thence South 41° 14' West 10.0 feet to a station at the center of a turning area, the radius of which is 30.0 feet.

(b)  A right of way over a parcel of land described as follows:

BEGINNING at an iron pipe on the Easterly boundary of the right of way above described under "(a)", from which an iron pipe at the Southeasterly end of the course reading  "thence South 31° 36' East 333.95 feet to an iron pipe" on the Southwesterly boundary of the parcel of land hereinabove described, bears North 81° 49' West 20.16 feet and South 31° 36' East 67.41 feet distant; thence from said point of beginning along the Easterly boundary of said above mentioned right of way North 15° 27' East 115.11 feet to a pipe at an angle North 67° 08' East 350.88 feet to a station from which an iron pipe at an angle in said boundary bears North 67° 08' East 9.08 feet distant; thence leaving said boundary South 64° 52' West 297.69 feet to a station; thence South 34° 13' West 150.32 feet to a station on the Easterly boundary of said above mentioned right of way; thence along said last mentioned boundary North 0° 55' East 3.43 feet to the place of beginning.

(c)  A right of way over the following parcel of land:

BEING a part of the Rancho Carbonero and being part of the right of way 40 feet wide, described as Exception No. 1 in Torrens Certificate of Title No. 481 and more particularly bounded and described as follows:

BEGINNING at a point on the Northerly boundary of lands conveyed to Albert L. Tanner, et ux., by Torrens Certificate of Title No. 481, registered September 26, 1947 with the Registrar of Titles, Santa Cruz County Records from which the Southeasterly end of a course in said above mentioned Certificate which reads "thence North 31° 36' West 333.95 feet to a station in a gluch" bears South 31° 36' East

67.41 feet distant; thence from said point of beginning along the Northerly boundary of said lands conveyed to Tanner South 31° 36' East 37.21 feet to a station on the Easterly boundary of lands described in Exception No. 1 in Torrens Certificate of Title No. 481; thence along said last mentioned boundary South 0° 55' West 97.72 feet to a station; thence North 65° 50' West 43.54 feet to a station on the Westerly boundary of lands described as Exception No. 1 in Torrens Certificate of Title No. 481; thence along said last mentioned boundary North 0° 55' East 114.46 feet to a 1/2 inch iron pipe; thence North 15° 27' East 21.16 feet to a station on the Northerly boundary of said above mentioned lands conveyed to Tanner; thence along said last mentioned boundary South 31° 36' East 27.32 feet to the place of beginning.

(d) An easement and right of way for road purposes over Lot A, as shown upon that certain map entitled "Amended Map Pasatiempo Estates Number One", filed for record February 19, 1931 in Map Book 25, Page 15, Santa Cruz County Records.

(e) An easement and right of way for road purposes over Lot I, as shown upon that certain map entitled "Tract No. 8, Subdivision No. 2 of Pasatiempo Estates", filed for record September 12, 1936 in Map Book 26, Page 8, Santa Cruz County Records.

(f) A right of way over lands described in Torrens Certificate of Title No. 125 in the office of the Registrar of Land Titles of Santa Cruz County, as follows:

BEING a part of the Carbonero Rancho and more particularly bounded and described as follows:

BEGINNING at the Easterly end of a curve on the Northerly boundary of Lot 1 in Block 20, as said Lot and Block are shown and designated on the map entitled "Amended Map Pasatiempo Estates No. One", filed for record February 19, 1931 in Map Book 25, Page 15, Santa Cruz County Records, said point being at the Easterly end of curve marked "R = 70.0 length 109.84 feet"; thence running Southeasterly along the Northerly boundary of said Lot 1 and the continuation thereof on a curve with a radius of 1630 feet through an angle of 24° 11.31' for a distance of 688.04 feet to a point of tangency; thence South 54° 55' East 217.11 feet to the beginning of a curve to the right; thence curving to the right with a radius of 670 feet through an angle of 28° 27.26' for a distance of 332.74 feet to a station at the Northerly end of a portion of Lot A as shown on Sheet 3 of four sheets on "Amended Map Pasatiempo Estates No. One", filed February 19, 1931 in Map Book 25, Page 15, Santa Cruz County Records; thence along the Northerly end of a portion of said Lot A North 63° 32' East 60.00 feet to an iron pipe; thence Northwesterly curving to the left with a radius of 730 feet from a tangent bearing North 26° 27.74' West through an angle of 28° 27.26' for a distance of 362.53 feet to a point of tangency; thence to and along the Southwesterly boundary of the lands described in Parcel 3 of Certificate of Title No. 41, recorded in the office of the Registrar of Titles of Santa Cruz County, North 54° 55' West 217.11 feet to the beginning of a curve; thence curving to the right with a radius of 1570 feet through an angle of 24° 11.31' for a distance of 662.81 feet to a station; thence leaving said boundary South 59° 16' West 60.00 feet to the place of beginning.

(g) A right of way over the following described parcel of land:

BEGINNING at a point on the Northeasterly boundary of lands described in Torrens Certificate of Title No. 125, from which the most Easterly corner of said lands bears along a curve to the right with a radius of 730 feet through an angle of 15° 13.26' a distance of 193.93 feet; thence from said point of beginning from a tangent bearing North 41° 41' West curving to the right with a radius of 50 feet through an angle of 66° 31' for a distance of 58.05 feet; thence North 24° 50' East 47.83 feet to a station; thence curving to the left with a radius of 450 feet through an angle of 26° 53' for a distance of 211.14 feet to a station; thence North 2° 03' West 370.79 feet to a station; thence South

87° 57' West 50.0 feet to a station; thence South 2° 03' East 370.79 feet to a station; thence curving to the right with a radius of 400 feet through an angle of 26° 53' for a distance of 187.68 feet to a point of compound curve; thence curving to the right from a tangent bearing South 24° 50' West with a radius of 50 feet through an angle of 101° 54' for a distance of 88.92 feet to a station on the Northeasterly boundary of said above mentioned lands described in Torrens Certificate of Title No. 125; thence along said last mentioned boundary from a tangent bearing South 53° 16' East curving to the right with a radius of 730 feet through an angle of 11° 35' for a distance of 147.58 feet to the place of beginning.

(h)  A right of way 40 feet in width, 20 feet on each side of the following described centerline:

BEGINNING at a point on the Northerly boundary of the above described right of way from which the Westerly end of course reading "South 87° 57' West 50.0 feet to a station" bears South 87° 57' West 25.0 feet distant; thence from said point of beginning North 2° 03' West 28.81 feet to a station; thence North 26° 54' East 141.43 feet to a station; thence North 55° 44' East 48.88 feet to a station; thence North 70° 14' East 73.93 feet to a station; thence North 63° 0' East 59.41 feet to a station; thence North 23° 56' East 85.54 feet to a station; thence North 6° 50' West 150.89 feet to a station; thence North 30° 45' West 296.50 feet to a station; thence North 24° 24' West 97.73 feet to a station; thence North 0° 55' East 95.31 feet to a station on the Southerly boundary of the right of way referred to as "(c)" above.

## JUDGMENT OF FORFEITURE

WHEREAS, in the Indictment in the above-entitled case, Plaintiff sought forfeiture to the United States of America of specific property of the Defendant Stephen Jay Songer, pursuant to Title 21, U.S.C. § 853;

AND WHEREAS, on October 3, 1986, the jury returned a special verdict of forfeiture as to all such property more specifically described in Count One of said Indictment;

AND WHEREAS, by virtue of said special verdict, the United States is now entitled to reduce the said property to its possession and notify any and all potential purchasers and transferees thereof of its interest therein;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That the title and interest to all of the hereinafter described property, whether real, personal and/or mixed, of the Defendant Stephen Jay Songer be, and it is hereby vested in the United States of America, and shall be safely held by the United States, and not be alienated, sold, or converted (except by Court order) pending possible appeal herein and further Order of this Court.

2. That a copy of this Judgment of Forfeiture may be recorded in every County in which any of the hereinafter described real property is located and, when recorded, shall be notice to any potential transferee or transferees of the interest of the United States of America therein.

3. That the property which is the subject of this Judgment of Forfeiture is as follows:

REAL PROPERTY:

32 East Ridge Drive, Santa Cruz, California

(Legal description attached as Exhibit A)

PERSONAL PROPERTY:

National Conveyor Corporation
7405 Greenbush Avenue
North Hollywood, California

Apple Computer Corporation

Affiliated Management, 4150 Riverside Drive, Burbank, California, including accounts titled Stephen J. Songer, 32 East Ridge Drive, Santa Cruz, California, and Songer Investment Account, 4150 Riverside Drive, Burbank, California

KSA Investment Company, 4150 Riverside Drive, Burbank, California

Date Palm Center, joint venture, 4150 Riverside Drive, Burbank, California

Commvest Securities Incorporated, 7124 N. University Drive, Tamarac, Florida (Account No. 550–00836)

E.F. Hutton Cash Fund, Investment Account; and Asset Management Account (Account No. 6800198729)

Barclay's Leasing

Azusa Properties, 4150 Riverside Drive, Burbank, California

Travel Consultants, 1253 East Village Road, Montecito, California

Ferrari automobile

1985 Mercedes, Model 280CE, automobile VIN WDV1230531A222905